**Steve HEARN and Theresa Hearn, Appellants,**

v.

**PETRA INTERNATIONAL CORPORATION, Appellee.**

**No. 61687.**

Court of Appeals of Oklahoma, Division 4.

Nov. 12, 1985.

Released for Publication by Order of Court of Appeals Dec. 20, 1985.

John R. Hargrave, Greg D. Givens, Foliart, Mills & Niemeyer, Oklahoma City, for appellants.

Larry Derryberry, O. Clifton Gooding, Derryberry, Duncan, Gray & Quigley, Oklahoma City, for appellee.

BRIGHTMIRE, Presiding Judge.

The question here is whether an employee of a wholly owned subsidiary corporation may maintain a common law negligence action against the parent company for injuries said to be caused by the parent's malfeasance. The trial court concluded he could not and sustained defendant's motion for summary judgment.[1] We hold, however, he can maintain the action and vacate the order appealed.

I

Steve Hearn was employed by Arden Drilling Company—operator of an oil well near Stillwater, Oklahoma. It is alleged that on December 18, 1982, Petra International Corporation delivered a water tank to the well site and while Petra employees attempted to unload it a cable snapped and lashed plaintiff—not involved in tank unloading—causing serious facial injuries.

Plaintiff brought this action against Petra less than a month before settling his workers' compensation claim against Arden. Defendant moved for a summary judgment. In the order sustaining the motion the following "findings" were made:

(1) Arden is a wholly owned subsidiary of Petra.

(2) Plaintiff was injured on the job while in the employ of Arden.

Based on these facts the trial judge concluded as a matter of law that at the time of the injury plaintiff was an employee of Petra and was therefore precluded by the

exclusive remedy provisions of 85 O.S.1981 § 12, from bringing a tort action against Petra.

II

The only issue raised by the parties is whether the trial court erred in "finding" that plaintiff was an employee of defendant Petra within the contemplation of our workers' compensation act.

We hold he did. The law of this state authorizes the creation of corporate entities and endows them with various legal rights, privileges and immunities. 18 O.S.1981 § 1.1 et seq. Among the attributes resulting from the artificial being is the recognition of a corporation's existence completely separate from the shareholders who own it thus enabling such shareholders to avoid personal liability either entirely or beyond a prescribed statutory amount. *Buckner v. Dillard,* 184 Okl. 586, 89 P.2d 326 (1939). At the same time, however, courts have sometimes "pierced the corporate veil" and disregarded the legal fiction that bestows on a corporation an existence separate and distinct from its stockholders when necessary to protect the interests of the public, circumvent fraud, protect the rights of third persons or accomplish justice. *Mid-Continent Life Ins. Co. v. Goforth,* 193 Okl. 314, 143 P.2d 154 (1943); *Bluejacket State Bank v. First National Bank,* 155 Okl. 300, 9 P.2d 2 (1932). Aside from such exigencies, however, the separate existence of a corporate entity is recognized and accorded the attributes granted by law. *Hulme v. Springfield Life Ins. Co.,* 565 P.2d 666 (Okl.1977). Such individuality exists whether the stock of the corporate entity is owned by natural individuals, other corporations, or, as in the case at bar, by one corporation.

Courts generally have declined to disregard a subsidiary's corporate identity at the request of a parent corporation. *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir.1979). The *Blue Diamond* opinion—a factually similar case which

---

**1.** No judgment was ever rendered, however. All the trial judge did was sustain defendant's mo-   tion for summary judgment.

dealt with the same issue we are concerned with here—features a commendable analysis of the general law involved and, by developing the basis for and evolution of both master-servant rules and workers' compensation act objectives, the author reached persuasive conclusions concerning undecided principles of Kentucky law which were thought likely to govern the "functional relationships" between parent and subsidiary corporations in Kentucky.

Underlying the judicial product in *Blue Diamond* was a perspective and philosophy engendered by the history and policy of the compensation act, namely, "that 'every presumption should be on the side of preserving' common law rights in the absence of 'compelling statutory language or social policy justification.'" *Id.* at 660. The *Blue Diamond* approach was approved and its rationale employed by the court in *Love v. Flour Mills of America*, 647 F.2d 1058 (10th Cir.1981), in undertaking to divine undecided Oklahoma law regarding the same issue. *Love*, in reaching the conclusion that under our state law a parent corporation is not an employer of subsidiary employees under the immunity provisions of our workers' compensation act,[2] quoted a particularly significant premise for *Blue Diamond's* reasoning, namely, that "'the tort system should not deny recovery in an increasingly concentrated economy to an injured employee due to the fortuitous circumstance that the tortfeasor is not a stranger but is controlled by the same business enterprise that controls his immediate employer.'" *Love's* prophesy was correct. We hold the parent corporation is a third party against whom plaintiff may maintain a common law tort action.

### III

■ This does not, however, end the matter. The record discloses a serious question of whether plaintiff's injuries resulted from activity carried on by defendant or another of its wholly owned subsidiaries. This action was filed June 13, 1983. The next day plaintiff served a set of interrogatories on defendant. The fourth question asked: "Was the defendant, as named in Plaintiff's Petition, the owner and operator of the winch truck and cable as alleged in Plaintiff's Petition?" On August 4, 1983, defendant answered this question "No." The next interrogatory was: "If the answer to any part of the above interrogatory is no, please state:

(a) Who was the owner and operator of the above mentioned things;"

Answer: "Petra Transportation, Inc."

"(b) The correct corporate name;"

Answer: "Petra Transportation, Inc."

"(c) The address, ..."

Answer: "2250 E. 73rd, Kensington Building, Tulsa, Oklahoma, 74137."

"(d) Any and all agreements between the defendant and said person or legal entity."

Answer: "None."

Nothing more appears in the record concerning Petra Transportation, Inc., until after this appeal was filed. In defendant's response to plaintiff's petition in error, defendant stated the facts to be that plaintiff sustained a job related injury while in the employ of Arden Drilling Company when he "was struck by a wench [sic] line which was attached to a truck owned and operated by Petra Transportation Company, ... a wholly owned subsidiary of Petra International Corporation."

The latter information comes too late to have any operative effect on the trial court proceedings. But it does focus attention on the interrogatory evidence—which stands undenied—that the company responsible for plaintiff's injuries appears to be one other than the defendant named in plaintiff's petition. The interrogatory evidence contradicts plaintiff's allegation that defendant owned the offending truck. Coupled with this is the answer to another interrogatory, No. 12, inquiring about the specific nature of the work performed by defendant. The answer was that it provided "corporate management and support

---

**2.** The conclusion was held not to be dispositive under the *Love* facts, however, in that no "independent act of negligence" on the part of the parent corporation was found to have been pleaded or proved by the plaintiff employee.

services including but not limited to accounting, legal counsel, financial services and billing." This response invites an inference that the parent company did no work at the well site.

Clearly, then, a material issue emerges that was not addressed by either of the parties or the judge in the trial court. If the facts are that Petra Transportation, Inc. was performing the work that brought harm to plaintiff then the very same legal rationale relied on to support his action against the defending parent corporation operates to shield the parent from the negligence of a subsidiary absent proof of some specific causative breach of duty by the parent or of some element of contract or agency relationship with the subsidiary imposing vicarious liability on the parent.

### IV

The order appealed is reversed and the cause is remanded with instructions to proceed further with the development of justiciable issues.

RAPP, J., and STUBBLEFIELD, J., concur.