932 P.2d 628 (1997)
131 Wash.2d 439
Paul E. MANOR and Lynette Manor, husband and wife, Respondents,
v.
NESTLE FOOD COMPANY, Petitioner.
No. 63133-6.
Supreme Court of Washington, En Banc.
Argued March 6, 1996.
Decided March 13, 1997.
*629 Rolland, O'Malley, Williams & Wyckoff, Wayne L. Williams, Olympia, for petitioner.
John H. McKean, Moses Lake, for respondent.
Craig A. Staples, Vancouver, for Amicus Curiae on Behalf of Washington Self-Insurers Ass'n.
TALMADGE, Justice.
Nestle Food Company (Nestle), a self-insured employer, paid more than $455,000 in medical and time-loss benefits to Paul Manor for a workplace injury he sustained. Now Manor wants to sue Nestle for the same injury. He asserts WAC 296-15-023(2), which declares Nestle to be Manor's employer, is invalid. Employing the standard of review set forth in our State's Administrative Procedure Act (APA), we hold the regulation is valid, and Nestle is therefore immune to suit by Manor under the exclusive remedy provision of the Industrial Insurance Act (IIA).

ISSUES
1. Does WAC 296-15-023(2) make Nestle Manor's employer for purposes of the Industrial Insurance Act?
2. Is WAC 296-15-023(2) valid under RCW 34.05.570(2)?

FACTS
On January 15, 1992, while working as a truck driver for Carnaco Transport, Inc. (Carnaco), Paul Manor went to the Carnation processed potato plant in Othello, Washington, to pick up a load. While at the plant, a forklift ran over Manor's foot. As a result of the industrial injury, Manor developed Guillain-Barre syndrome and became paralyzed. He finally was able to leave the hospital in November 1992, but required additional care at home.
The Carnation Company (Carnation) became a self-insurer under the IIA for itself and its various subsidiaries in 1979. Carnaco was a subsidiary of Carnation and maintained facilities in Moses Lake. Carnation also owned the processed potato plant in Othello, Washington, where Manor was injured. From 1979 forward, Carnation treated all of its employees, including those at the processed potato plant in Othello and its Carnaco employees, as employees under its certificate of self-insurance with the Department of Labor & Industries (Department). In 1985, Carnation became a wholly-owned subsidiary of Nestle Holdings, Inc., and its name was eventually changed to Nestle Food Company.[1]
*630 Manor filed a claim with Carnaco for industrial insurance benefits, listing Carnaco as his employer. The Department allowed the claim by order of February 14, 1992. Manor did not appeal the order. Ultimately, Nestle paid Manor medical benefits of $437,187.02, and time-loss benefits of $18,646.66.
Manor filed a personal injury action against Nestle in April 1993. He alleged Nestle was liable for its own negligence and, under the principle of respondeat superior, for the negligence of the forklift operator who ran over his foot. Nestle argued it was immune under Title 51 RCW because the forklift operator was Manor's fellow employee.
Nestle moved for dismissal. Manor argued, under the common law, the forklift operator was not a fellow Nestle employee. The trial court granted the motion to dismiss because Manor's injury was caused by a fellow employee and Nestle was immune under the IIA. The trial court also held the designation of Nestle as Manor's employer in the Department's February 14, 1992 order had preclusive effect.
Manor appealed and the Court of Appeals reversed, holding a self-insured parent corporation is not, as a matter of law, the employer of employees working for a subsidiary, and material issues of fact remained as to whether Nestle should be considered Manor's employer. The Court of Appeals also disagreed with the trial court on the preclusive effect of the Department's decision. Manor v. Nestle Food Co., 78 Wash.App. 5, 895 P.2d 27 (1995). We granted review.

ANALYSIS
An employer may comply with the requirements of the IIA either by insuring with the State Industrial Insurance Fund or qualifying as a self-insurer under Title 51 RCW. Self-insurers must pay the claims of their injured workers. Therefore, self-insurers obtain the same immunity from actions by employees as state fund employers. RCW 51.04.010 (exclusive remedy provision); RCW 51.32.010. Although an injured worker may not sue his or her employer for a workplace injury, RCW 51.24.030(1) authorizes suit against a third person at fault for the worker's injury, provided the third person is not in the worker's same employ.
The central issue in this case is whether Manor and the forklift operator who ran over his foot were "in the same employ" for purposes of RCW 51.24.030(1). The dispositive regulation is WAC 296-15-023(2). Promulgated under the Department's authority to regulate self-insurers, WAC 296-15-023(2) states: "One certificate will be issued to an approved self-insurer, including all subsidiaries or divisions. The entities will be considered as one employer for all purposes of Title 51 RCW." (Emphasis added.) This regulation addresses and cures a serious coverage problem under the Act. In the absence of a mandate that an employer include all of its subsidiaries or divisions within its certificate of self-insurance, the self-insured employer could structure its business so that it was self-insured for employees in its low risk activities, while employees in its high risk activities were covered by the state fund, skewing the cost to employers in the state fund. WAC 296-15-023(2) makes Manor and the forklift operator employees of the same self-insured employer, Nestle. However, the Court of Appeals held the regulation invalid.
A. Standard for Judicial Review of an Agency Regulation
WAC 296-15-023(2) provides that Nestle is to be treated as an employer for all purposes under Title 51. While this is a regulation and not a statute, "[i]t has been established in a variety of contexts that properly promulgated, substantive agency regulations have the `force and effect of law.'" Chrysler Corp. v. Brown, 441 U.S. 281, 295, 99 S.Ct. 1705, 1714, 60 L.Ed.2d 208 (1979); "[a] legislative rule has the force and effect of law, if promulgated in accordance with a legislative delegation." 2 AM. JUR. 2D, Administrative Law § 160, at 182 (1994).
The Court of Appeals, in holding the regulation invalid, gave it short shrift, deciding it is "not reasonably consistent" with its enabling legislation because "[it] may result *631 in the denial of a worker's right to bring a third-party claim against the parent company of his employer merely because the parent chose to self-insure." Manor, 78 Wash.App. at 10, 895 P.2d 27. The Court of Appeals did not further articulate how WAC 296-15-023, first promulgated in 1983 and unaltered by legislative amendment since then,[2] was somehow an irrational or aberrational exercise of delegated legislative authority. The Court of Appeals simply concluded the regulation is invalid without reference to the APA standard for judicial review of the validity of an agency regulation, or to our leading decision interpreting that APA standard. A proper APA analysis reveals no reason to invalidate WAC 296-15-023(2).[3]
The Legislature enacted the APA in 1988, Laws of 1988, ch. 288, and added "a new criterion which significantly expands the review process." Neah Bay Chamber of Commerce v. Department of Fisheries, 119 Wash.2d 464, 469, 832 P.2d 1310 (1992). The Legislature set forth the standard of review for agency regulations in RCW 34.05.570(2)(c):
In a proceeding involving review of a rule, the court shall declare the rule invalid only if it finds that: The rule violates constitutional provisions; the rule exceeds the statutory authority of the agency; the rule was adopted without compliance with statutory rule-making procedures; or the rule is arbitrary and capricious.
This Court extensively analyzed and interpreted the new statute in Neah Bay. There, we considered the former version of the statute, which differed significantly only in the last phrase, "could not conceivably have been the product of a rational decision-maker," a phrase now replaced by "arbitrary and capricious." We held:
In sum, the "product of a rational decision-maker" standard adopted by the Legislature at RCW 34.05.570(2)(c) involves an inquiry into the reasonableness of regulations analogous to the application of the arbitrary and capricious standard. To decide if a regulation should be overturned because it could not conceivably be the product of a rational decision-maker, we hold that the proper analysis is the 3-part test suggested by amicus, Professor Andersen, and utilized by the federal courts. See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). The court's task is to determine if a given regulation is reasonable without substituting this court's judgment for that of the agency. First, the court inquires if the agency's explanation of its own rule is clear. Second, the court must ask if the agency utilized the appropriate statutory framework, whether it used correct factors in deciding the rule, and if it avoided improper factors. Third, the court must decide if a decision-maker could have reached the conclusion reached by the agency (taking the foregoing into account) by some reasonable process.
This analysis requires the court to review the administrative record to determine the factors employed by the agency and the quality of its reasoning. The court must scrutinize the record to determine if the result was reached through a process of reason, not whether the result was itself reasonable in the judgment of the court.
Neah Bay, 119 Wash.2d at 473, 832 P.2d 1310. The Court thus equated the "product of a rational decision-maker" standard with the "arbitrary and capricious" standard. The Legislature later acquiesced in this interpretation in 1995 when it changed the language of the final phrase to "arbitrary and capricious." Laws of 1995, ch. 403, § 802. *632 See 1995 Final Legislative Report, EHSB 1010, at 7 (February 1, 1995) ("The current `conceivably the product of a rational decision maker' standard of review is changed to `arbitrary and capricious'").
B. Analysis of WAC 296-15-023(2) Under the Statutory Standard of Review
RCW 34.05.570(1) places the burden of demonstrating the invalidity of a rule on the party asserting invalidity. Although Manor did not undertake this responsibility, the following analysis, mandated by RCW 34.05.570(2)(c), demonstrates the rule is valid.
1. Does the Rule Violate Constitutional Provisions? The Court of Appeals found WAC 296-15-023 appropriate in all respects, except the phrase treating the self-insurer as a single employer for all Title 51 RCW purposes, including immunity. The Court of Appeals held the regulation is inconsistent with the IIA to the extent it requires parent companies to be treated as employers for all purposes, because doing so would deprive the worker of the right to bring a third-party suit against a parent merely because the parent chose to self-insure. The Court of Appeals based this conclusion on the ostensibly disparate treatment between employees of self-insured employers and employees of state fund employers, citing Johnson v. Tradewell Stores, Inc., 95 Wash.2d 739, 630 P.2d 441 (1981).
Johnson was an equal protection case under article I, section 12 of the Washington Constitution. The issue there was whether a worker who prevails on appeal of a decision of the Board of Industrial Insurance Appeals is entitled to an award of reasonable attorney fees. At the time, RCW 51.52.130 permitted recovery of attorney fees only if the accident fund was affected by the litigation. This provision excluded workers of self-insured employers from receiving attorney fees under the same facts that would entitle a worker of a state fund insured employer to fees. In holding the successful plaintiffs were entitled to costs and attorney fees under the statute, the Court said:
It is a manifest injustice of the most egregious nature, and we hold it to be a violation of the equal protection clause of the Fourteenth Amendment and Const. art. 1, § 12 to classify one group of employees so that they receive fewer benefits than similarly situated employees simply because the employer chooses to be self-insured.
Johnson, 95 Wash.2d at 745, 630 P.2d 441.
Today, we apply the rational basis test to evaluate equal protection claims: "Under the rational basis test, a legislative classification will be upheld `unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.' ... The burden is on the party challenging the classification to show that it is `purely arbitrary.'" State v. Coria, 120 Wash.2d 156, 171-72, 839 P.2d 890 (1992), quoting Omega Nat'l Ins. Co. v. Marquardt, 115 Wash.2d 416, 431, 799 P.2d 235 (1990). Applying the rational basis test, we find no equal protection infirmity in the regulation before us.
The Court of Appeals expressed concern that a decision for Nestle would deprive a worker of the "right" to bring a third-party lawsuit solely because the parent is self-insured, labeling that result somehow antithetical to the equal treatment to be afforded workers under the IIA. We disagree. There are at least three answers to the Court of Appeals' concern.
First, the true victim of an equal protection violation under the Court of Appeals holding would be self-insured, statutory employers like Nestle. WAC 296-15-023(2) makes a self-insuring, parent company like Nestle responsible to compensate injured employees of its subsidiaries. The Act contemplates, and WAC 296-15-023(2) makes express, that an employer seeking self-insured status must decide either to have all of its subsidiaries or divisions self-insured, or all of its subsidiaries or divisions covered by the state fund. As Nestle is financially responsible for compensation to injured workers, so should it be immune from suit by injured workers. To hold otherwise would deny Nestle the immunity from suit the IIA grants to all employersa result without logic or justice.[4]
*633 Here, Nestle compensated Manor for his injury, as the law required it to do. By fulfilling its obligations to Manor under Title 51, Nestle should, a fortiori, be entitled to its side of the quid pro quo central to the entire workers' compensation statutory design: it should be immune from suit by Manor. In the words of the late Professor Larson, "immunity follows compensation responsibility." 2A ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 72.33, at 14-290.3 (1993).
Second, Professor Larson writes: "When compensable injury is the result of a third person's tortious conduct, all statutes preserve a right of action against the tortfeasor, since the compensation system was not designed to extend immunity to strangers." LARSON, supra § 71.00, at 14-1 (1993). Here, Nestle is hardly a third party to Manor in the ordinary sense of being a "stranger to the transaction." Nestle insured Manor. Nestle paid Manor $455,000 in medical and time-loss benefits. Rather than crediting these salient facts, the Court of Appeals took the hypertechnical view that if Nestle is not the common law employer of Manor, it must of necessity be a third party and therefore not immune from suit by Manor.[5]
*634 Our courts have many times in the past looked to the overall purpose and policy of the IIA to avoid such hypertechnical readings. For example, in Corr v. Willamette Indus., Inc., 105 Wash.2d 217, 713 P.2d 92 (1986), we held the plaintiff, an employee of the defendant's wholly owned subsidiary, did not state a claim against the defendant for injuries arising out of an industrial accident because the defendant was the plaintiff's employer. See also Wolf v. Scott Wetzel Servs., Inc., 113 Wash.2d 665, 782 P.2d 203 (1989) (claims administrator entitled to immunity under IIA); Coulter v. State, 93 Wash.2d 205, 608 P.2d 261 (1980) (Department safety inspectors not third persons under the IIA); Deeter v. Safeway Stores, Inc., 50 Wash.App. 67, 747 P.2d 1103 (1987) (claims administrator entitled to immunity under IIA because it was acting as agent of employer), review denied, 110 Wash.2d 1016 (1988). In Wolf, 113 Wash.2d at 676-77, 782 P.2d 203, we referenced with favor Judge Grosse's concurring opinion in Deeter, where he wrote:
The relationship of the employee, the employer, and the claims adjuster for the employer with respect to a claim for delay in payment which involves a dispute over the right to, or amount of, compensation flows from the rights and obligations created by the IIA, not from any independent source. To permit a right of action against the claims adjuster merely because it is a "third party" would vitiate the policy of the IIA.
Deeter, 50 Wash.App. at 83-84, 747 P.2d 1103 (Grosse, J., concurring). Here, the IIA creates Nestle's obligations to Manor. The Act makes Nestle responsible for Manor's injury compensation. Having fulfilled its obligation under the IIA to provide Manor "sure and certain relief," Nestle is correspondingly entitled to immunity from "all civil actions and causes of action" stemming from Manor's injury. RCW 51.040.010 (declaring purpose of IIA and abolishing jurisdiction of courts).
Third, the Court of Appeals asserts workers must receive equal treatment under the IIA in every case, and that equal protection concerns arise when workers do not receive equal treatment. This is an overstatement. The IIA treats employees of self-insured employers differently from employees of state fund-insured employers in several ways.
For example, the employees of self-insured employers need not pay one-half of the cost of the medical aid fund, as do the employees of state fund employers. RCW 51.16.140(1). It is a gross misdemeanor for self-insurers to obtain or even attempt to obtain a comparable contribution from their employees. RCW 51.16.140(2). Employees of self-insured employers have the right to a penalty against their employers for delay or refusal to pay benefits. RCW 51.48.017. The existence of such a penalty provision obviously gives employees leverage in bargaining for benefits with their self-insured employer. RCW 51.32.190 details claim processing procedures applicable only to self-insurers. These distinctions in treatment indicate, contrary to the Court of Appeals implication, there is no requirement in the IIA for precisely similar treatment of employees of self-insureds and state fund employers, and there is nothing inherently improper about dissimilar treatment.
Rather, the pivotal equal protection inquiry in this case is whether WAC 296-15-023(2) passes the rational basis test. There is plainly nothing arbitrary about WAC 296-15-023(2). It achieves a legitimate state objective by creating statutory employers to ensure subsidiary corporations meet their industrial insurance premium obligations. In return, it grants those statutory employers immunity from suit by injured workers. The regulation is simply an accurate reflection of the "grand compromise" of the IIA. Indeed, to deny immunity to Nestle, a statutory employer, would violate its right to equal protection compared to similarly situated common law employers, who would be immune from suit by Manor under the same circumstances.[6]
*635 WAC 296-15-023(2) does not violate equal protection principles. The rule passes the first statutory test.
2. Does the Rule Exceed the Statutory Authority of the Agency? The Department is generally authorized to promulgate regulations governing the administration of Title 51 RCW, RCW 51.04.020(1), as well as rules for self-insured employers specifically. RCW 51.14.020(7). The rule at issue here, by mandating that Nestle be treated as an employer for all purposes of Title 51, is within the bounds of the authorizing statute. The key provision of the IIA, immunizing employers from suits by injured workers in return for swift and sure compensation, is precisely what WAC 296-15-023(2) implements in this case. It is plainly within the authority of the Department to designate which entities shall be considered employers for the purposes of Title 51. Obviously, such determinations are limited to the purview of Title 51, and do not and cannot affect the common law or other statutory law governing parents and subsidiaries or employers and employees. The rule passes the second statutory test.
3. Was the Rule Adopted Without Compliance With Statutory Rule-Making Procedures? Neither party makes such a claim, and there is nothing in the record to support such a claim. The rule passes the third statutory test.
4. Is the Rule Arbitrary and Capricious? The fourth test requires the most analysis: "The court's task is to determine if a given regulation is reasonable without substituting this court's judgment for that of the agency." Neah Bay, 119 Wash.2d at 473-74, 832 P.2d 1310. A three-part test applies:
First, the court inquires if the agency's explanation of its own rule is clear. Second, the court must ask if the agency utilized the appropriate statutory framework, whether it used correct factors in deciding the rule, and if it avoided improper factors. Third, the court must decide if a decision-maker could have reached the conclusion reached by the agency (taking the foregoing into account) by some reasonable process.
Id. at 473-74, 832 P.2d 1310. No agency explanation of the rule appears in the record, so we are unable to make the first inquiry. The following analysis demonstrates, however, the regulation meets all the remaining requirements of the test.
WAC 296-15-023 is a rational approach to the problem of self-insured businesses' spinning a risky portion of their enterprise off to state fund coverage, and ensuring that corporate parents bear complete responsibility for the coverage of the workers of the parent and any of its subsidiaries. The rule is designed to ensure, with the changes in status of employers through merger, consolidation, combination, and otherwise, employees will not have to guess who their employer is for purposes of the IIA, and employees will receive the statutorily-mandated coverage.
Before an employer is certified as a self-insurer, the employer must identify the name and location of each of its businesses. RCW 51.14.030(5)(e). Pursuant to its general rule-making authority, the Department adopted WAC 296-15-023(1), which provides the certification of a firm as a self-insurer "will include all of its subsidiaries or divisions doing business in the state of Washington." Subsection (2) of that rule states that only one certificate will be issued to an approved self-insurer, "including all subsidiaries or divisions," and "[t]he entities will be considered as one employer for all purposes of Title 51 RCW." (Emphasis added.) See RCW 51.04.120; WAC 296-17-380; WAC 296-17-390; WAC 296-17-87306 (providing analogous requirements for insuring State fund employers with multiple enterprises or subsidiaries).
*636 To put the rule in appropriate context, the Department has evidenced an unambiguous intent to prevent self-insured corporate parents from evading industrial insurance coverage for employees of subsidiaries. In addition to the mandate of WAC 296-15-023, a self-insurer may not cease business, change its corporate organization, or sell parts of itself without notifying the Department and assuming liability for all claims during the self-insured period for the separated part of the business. WAC 296-15-170. Most significant, a self-insured parent corporation guarantees the payment of benefits to employees of its subsidiaries:
If an applicant for self-insurance certification is a subsidiary, the parent firm shall furnish the department with its guarantee to assume and be responsible for the workers' compensation liabilities of the subsidiary in the event the subsidiary firm is unable or unwilling to cover these liabilities. If a self-insurer is purchased by another firm, which becomes its parent, the parent shall provide the department with its most recent audited financial statement and its guarantee.
WAC 296-15-022. In effect, the parent agrees to stand in the shoes of the subsidiary corporation for the subsidiary's industrial insurance obligation to its workers, if the subsidiary cannot perform.
In conclusion, ample reasonable bases exist to support the regulation. The regulation is valid. Nestle paid Manor compensation for his injuries. This Court has "consistently held that when an employer ... pays its industrial insurance premiums pursuant to the Act the employer may no longer be looked to for recourse." Seattle First Nat'l Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 241, 588 P.2d 1308 (1978). We should not now disregard this fundamental tenet of the IIA.[7]

CONCLUSION
Carnation, and later Nestle, complied with the requirements of self-insurance under Title 51 RCW. They paid the appropriate premiums and complied with the requirements of statute and regulation that self-insurance cover all employees of the parent corporation and its subsidiaries. Thus, Carnation, and later Nestle, were Manor's employer for purposes of the IIA. Nestle here paid more than $455,000 in industrial insurance benefits to the injured worker in accordance with the terms of Title 51 RCW. Having done so, Nestle is entitled to the immunity from suit afforded by RCW 51.04.010.
The decision of the Court of Appeals is reversed. We remand this case to the Adams County Superior Court for entry of an order consistent with this opinion.
DURHAM, C.J., and DOLLIVER, SMITH, GUY and JOHNSON, JJ., concur.
MADSEN, Justice (dissenting).
The Industrial Insurance Act (IIA) grants the worker the valuable right to bring third party actions. There is no sound basis for denying Mr. Manor that right.
Nothing in Title RCW 51 provides that a self-insured corporate parent of a subsidiary is the "employer" of the worker. There is nothing in the history of the self-insurance statutes showing that the Legislature intended when enacting the self-insurance provisions that a self-insuring corporate parent be considered the "employer" of a subsidiary's worker. Nothing in the quid pro quo compromise underlying the workers' compensation scheme contemplated the rise of today's modern corporate structures, and nothing about that compromise dictates that the corporate parent must be considered the "employer." The purpose of WAC 296-15-023(2)'s provision that the entities covered under the corporate parent's certification of self-insurance is to prohibit selective certification where some risks are self-insured while others are insured by the state fund. Nothing about this purpose requires that a self-insured corporate parent be considered its subsidiary's worker's "employer."
*637 Nonetheless, under the majority opinion Paul Manor is barred as a matter of law from bringing a third party action, based solely on a single sentence in WAC 296-15-023(2). That single sentence, however, is beyond the authority of the Department of Labor and Industries to promulgate, and it is contrary to our workers' compensation scheme.
Moreover, the majority's result is unjust. If Manor had been covered under the state fund he clearly would not be barred from a third party action as a matter of law. The differing treatment the majority analysis accords the worker, who happens to be covered by self-insurance rather than under the state fund, is unjustified. Further, Paul Manor has hardly received a windfall in the form of workers' compensation benefits. While he received over $455,000 in total benefits, over $437,000 of that amount represents medical benefits, attesting to the severe nature and consequences of his industrial injury. Finally, there is a fact question in this case whether Nestle Food even paid the workers' compensation costs attributable to Carnaco, Manor's employer, or whether those costs were paid by Carnaco. This is not the dispositive question, as explained below, but its existence simply underscores the unfairness of the majority's result in this case.
For these reasons, I dissent.
Initially, the issues in this case are more complex than the majority opinion indicates. In one short paragraph the majority concludes that the Department of Labor and Industries was within its delegated authority in promulgating WAC 296-15-023(2), but fails to address relevant statutes and policies affecting the validity of the WAC. The majority simply assumes that Nestle paid workers' compensation premiums and, by virtue of such payment, is entitled to immunity.
Turning first to the IIA, the statutes plainly contemplate that an employer may elect to become self-insured. RCW 51.08.173; RCW 51.14.010; RCW 51.14.020(1). The statutes nowhere contemplate that self-insuring confers the status of employer to one not otherwise an employer, and neither Nestle Foods nor the majority cites to any statute providing that a self-insuring corporate parent is the "employer" of its subsidiary's workers.[1] In addition, the self-insurance statutes were enacted by the Legislature to permit an alternative means of providing workers' compensation coverage. There is no inkling that the Legislature had in mind when enacting the statutes that by self-insuring a corporate parent could thereby change from nonemployer status to employer status and obtain immunity from civil liability in a third party action.
Nor is there any basis in the origins of the workers' compensation statutes for treating the corporate parent as an employer for purposes of the IIA. The quid pro quo compromise underlying the workers' compensation acts was effected before the advent of the modern corporate system:
Workmen's compensation laws were passed before the multi-unit enterprise became the norm in the American economy and before the accompanying managerial revolution in American business. See Chandler, The Visible Hand 377-498 (1977). For this reason, state workmen's compensation laws ... do not address the question of a parent corporation's immunity from common law tort liability for injuries to its subsidiaries employe[e]s....
Boggs v. Blue Diamond Coal Co., 590 F.2d 655, 658 (6th Cir.), cert. denied, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979). See also, e.g., Gigax v. Ralston Purina Co., 136 Cal. App.3d 591, 186 Cal.Rptr. 395, 399 (1982) (because workers' compensation laws were passed before modern corporate structuring, whether parent corporation was entitled to immunity for injuries to an employee of kindred corporation was an "unresolved" "pristine" issue); Hearn v. Petra Int'l Corp., 710 P.2d 769, 771 (Okla.Ct.App.1985).
*638 Today, giant multi-unit national and even international enterprises are common, and the IIA, the result of the compromise in Washington, could not have contemplated and did not contemplate this modern business environment. The IIA has not remained static, of course, and numerous amendments and additions to its provisions have occurred over the years, adding new dimensions to the "compromise." However, as noted, there are no statutes addressing the parent-subsidiary issue raised in this case.
As Nestle Food's counsel conceded at oral argument, then, the sole basis for treating Nestle Foods as Manor's employer is WAC 296-15-023(2). WAC-296-15-023 provides that the self-insurance certification of a firm will include all of its subsidiaries doing business in Washington, and that one self-insurance certificate "will be issued to an approved self-insurer, including all subsidiaries or divisions. The entities will be considered as one employer for all purposes of Title 51 RCW." WAC 296-15-023(2). The purpose of the WAC is explained in an affidavit by a senior surety analyst with the Department of Labor and Industries who explained that the rule effectuates the Department policy "to prohibit selective certification where some risks are allowed to self-insure and others would be insured by the state industrial insurance fund." Clerk's Papers at 91.
This purpose does not, however, require that a self-insuring corporate parent be considered to be the employer of its subsidiary's employees. The same purpose could be achieved by simply requiring in such circumstances that all the affiliated companies must self-insure, without declaring that all such affiliates are "one employer" for purposes of the IIA.
In providing that affiliated companies are "one employer," the Department of Labor and Industries exceeded its authority when providing that affiliated companies constitute one employer if they self-insure. An administrative agency is limited to the powers and authority which the Legislature grants to it. Fahn v. Cowlitz County, 93 Wash.2d 368, 374, 610 P.2d 857 (1980). In general, an agency or administrative board charged with enforcement of certain statutes may lawfully exercise delegated authority where the Legislature has provided standards or guidelines, if adequate safeguards are provided in regard to promulgation of rules and testing the constitutionality of the rules after promulgation. Auburn v. King County, 114 Wash.2d 447, 452, 788 P.2d 534 (1990); Barry & Barry, Inc. v. Department of Motor Vehicles, 81 Wash.2d 155, 500 P.2d 540 (1972), appeal dismissed, 410 U.S. 977, 93 S.Ct. 1503, 36 L.Ed.2d 173 (1973). Authority may be delegated to determine a fact or state of things upon which application of the law is made to depend. Fahn, 93 Wash.2d at 374, 610 P.2d 857.[2]
If an agency rule exceeds its delegated authority, the rule is invalid. RCW 34.05.570(2)(c). This court has explained that under this principle, where the Legislature has specifically delegated rule-making authority to an administrator, the rules are presumed valid so long as they are reasonably consistent with the statutes being implemented. St. Francis Extended Health Care v. Department of Social & Health Servs., 115 Wash.2d 690, 702, 801 P.2d 212 (1990). However, if there are compelling reasons which show that the rule is in conflict with the content and purpose of the legislation, the rule will be struck down. Omega Nat'l Ins. Co. v. Marquardt, 115 Wash.2d 416, 428, 799 P.2d 235 (1990).
For two reasons the provision in WAC 296-15-023(2) that affiliated companies will be considered one employer for all purposes of the IIA is contrary to the content and the purpose of the IIA. First, the statutes provide that an employer may self-insure, but do not provide that an election to self-insure by a corporate parent makes that parent the employer. The rule is thus contrary to the RCW 51.08.173 and statutes to similar effect. Second, the rule is contrary to two policies of the IIA. The first is one this court previously and emphatically recognized in Johnson v. Tradewell Stores, Inc., 95 Wash.2d 739, 630 P.2d 441 (1981): The thrust of RCW 51.14 is *639 not that it is intended to treat employees differently dependent upon whether they are covered under a self-insurance scheme or the state fund. "Nowhere in RCW Title 51 is there even a hint that the legislature intended some covered employees to be treated differently than others." Johnson, 95 Wash.2d at 745, 630 P.2d 441 (emphasis added). The second policy is recognition of the worker's important right to bring third party claims which is embodied in RCW 51.24.030(1). As this court has recognized, if an employment agreement is established, "moderate" benefits are available to the worker under the IIA. But where the employment relationship is asserted as a defense in a third party action, reaching the conclusion that an employment relationship exists "results in the destruction of valuable common-law rights to the injured work[er]." Novenson v. Spokane Culvert & Fabricating Co., 91 Wash.2d 550, 555, 588 P.2d 1174 (1979).
These two policies foreclose the disputed WAC provision because it destroys the right of an injured worker to maintain a third party action solely because he or she is covered under a self-insurance program rather than under the state fund.[3]
If Paul Manor was not covered under a self-insurance program, there would be no automatic bar to his third party suit. There are fact questions remaining as to whether Nestle Foods was his employer under Washington's control-consent test of an employment relationship for purposes of workers' compensation which requires that "(1) the employer has the right to control the servant's physical conduct in the performance of his duties, and (2) there is consent by the employee to this relationship." Novenson, 91 Wash.2d at 553, 588 P.2d 1174; accord Marsland v. Bullitt Co., 71 Wash.2d 343, 428 P.2d 586 (1967); Fisher v. City of Seattle, 62 Wash.2d 800, 384 P.2d 852 (1963); see Jackson v. Harvey, 72 Wash.App. 507, 864 P.2d 975, review denied, 124 Wash.2d 1003, 877 P.2d 1287 (1994); Smick v. Burnup & Sims, 35 Wash.App. 276, 666 P.2d 926 (1983). Moreover, there are also fact questions about whether Nestle Foods and Carnaco have separate corporate identities or whether they have one identity and thus Nestle Foods is Manor's employer entitled to immunity under the IIA. See generally 2A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 72.40, at 14-290.29,.32-33 (1996) (footnotes omitted).
The overwhelming majority of courts in other jurisdictions have concluded, as the Court of Appeals did in Meads v. Ray C. Roberts Post 969, Inc., 54 Wash.App. 486, 774 P.2d 49 (1989), that a parent corporation is not as a matter of law entitled to the workers' compensation immunity of its subsidiary.[4]See, e.g., Muniz v. National Can Corp., 737 F.2d 145 (1st Cir.1984) (Puerto Rico law); Boggs v. Blue Diamond Coal Co., 590 F.2d 655 (6th Cir.1979) (Kentucky law); First Nat'l Bank v. Tracor, Inc., 851 F.2d 212 (8th Cir.1988) (Arkansas law); Love v. Flour Mills, 647 F.2d 1058 (10th Cir.1981) (Oklahoma law); Gregory v. Garrett Corp., 578 F.Supp. 871 (S.D.N.Y.1983) (Connecticut and North Carolina law); Peterson v. Trailways, Inc., 555 F.Supp. 827 (D.C.Colo.1983); Stoddard v. Ling-Temco-Vought, Inc., 513 *640 F.Supp. 314 (C.D.Cal.1980) (Texas law), remanded on other grounds, 711 F.2d 1431 (9th Cir.1983); Croxton v. Crowley Maritime Corp., 817 P.2d 460 (Alaska 1991); Oliver v. Bluegrass Resources Corp., 284 Ark. 1, 678 S.W.2d 769 (1984); Gigax v. Ralston Purina Co., 136 Cal.App.3d 591, 186 Cal.Rptr. 395 (1982); Gaber v. Franchise Servs., Inc., 680 P.2d 1345 (Colo.Ct.App.1984); Gulfstream Land & Dev. Corp. v. Wilkerson, 420 So.2d 587 (Fla.1982); McQuade v. Draw Tite, Inc., 659 N.E.2d 1016 (Ind.1995); Phillips v. Stowe Mills, Inc., 5 N.C.App. 150, 167 S.E.2d 817 (1969); Leeman v. Boylan, 134 N.H. 230, 590 A.2d 610 (1991); Volb v. G.E. Capital Corp., 139 N.J. 110, 651 A.2d 1002 (1995); Samaras v. Gatx Leasing Corp., 75 A.D.2d 890, 428 N.Y.S.2d 48 (1980); Hearn v. Petra Int'l Corp., 710 P.2d 769 (Okla.Ct.App.1985); Kiehl v. Action Mfg. Co., 517 Pa. 183, 535 A.2d 571 (1987); Stratman v. Admiral Beverage Corp., 760 P.2d 974 (Wyo.1988); cf. Porter v. Beloit Corp., 667 F.Supp. 367 (S.D.Miss.1987) (exclusive remedy provision of workers' compensation act did not bar suit against subsidiary corporation by employee of parent corporation); Boswell v. May Ctrs., Inc., 669 S.W.2d 585 (Mo.Ct.App.1984) (same); Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 550 N.E.2d 127 (1990) (involving affiliated and successor corporations). Some courts have held the corporate parent is entitled to immunity. E.g., Wells v. Firestone Tire & Rubber Co., 421 Mich. 641, 364 N.W.2d 670 (1984) (under Michigan's economic reality test); Rasnick v. Pittston Co., 237 Va. 658, 379 S.E.2d 353 (1989). See generally 2A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 72.40 (1996) (discussing immunity of affiliated corporations and citing numerous cases); Charles R.P. Keating & Gail O'Gradney, Fletcher Cyclopedia on the Law of Private Corporations § 43.80 (1990); Annot., Workers' Compensation Immunity as Extending to One Owning Controlling Interest in Employer Corporation, 30 A.L.R.4th 948 (1984).
The court should hold the WAC provision invalid. It neither serves its own purpose nor is it consistent with the IIA or its policies.
The majority says, though, that Nestle Foods is entitled to immunity because it paid costs of workers' compensation for Manor. Whether Nestle Foods paid costs of its subsidiary, and the extent to which corporate finances may have been intertwined is a fact question which is relevant to the issue whether the corporate parent and the subsidiary were in effect one entity entitled to immunity under the IIA. It is not, however, dispositive on the issue of whether Nestle Foods is Manor's employer. In Marsland, 71 Wash.2d 343, 428 P.2d 586, this court found no immunity for a company which had primary responsibility for workers' compensation premiums because the entity was not factually the worker's employer under the consent-control test. See also, e.g., Gulfstream Land & Dev. Corp. v. Wilkerson, 420 So.2d 587 (Fla.1982) (unless there is absolute integration of the two entities, a parent corporation is not the employer of the subsidiary's employee, and a joint policy of workers' compensation insurance does not provide a basis for immunity); Stratman v. Admiral Beverage Corp., 760 P.2d 974, 984 (Wyo.1988) ("[c]overage of affiliated corporations under the same worker's compensation insurance policy or state account is not relevant to the issue of whether the employee of one affiliate is also the employee of the other;" if the worker is not an employee of the particular corporation sued, that corporation is not immune regardless of whether it made fund payments).
In this case, there is also a fact question as to whether Nestle Foods paid the workers' compensation costs or whether they were charged back to Carnaco. Of course, charging them back would lend support to Manor's claim that Nestle Foods was not factually his employer because in that event it would be evidence that Carnaco had a separate corporate identity from Nestle Foods.
It is also significant to note that if Manor were able to pursue a third party claim against Nestle and prevail, he would not be entitled to any double recovery nor would Nestle have to pay more than his actual damages. Even if a corporate parent has provided self-insured workers' compensation coverage, the IIA provides for an offset or *641 similar reduction of a damages award to account for workers' benefits paid. RCW 51.24.050; RCW 51.24.060. Cf. Goodman v. Boeing Co., 127 Wash.2d 401, 404-06, 899 P.2d 1265 (1995) (where self-insuring employer paid time-loss benefits, that part of jury award against self-insuring employer for discrimination against employee which represented lost wages and earnings capacity was offset by time-loss benefits paid, and the self-insuring employer was subrogated to future workers' compensation benefits); 2A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 72.97, at 14-342 (1996) (carrier sued as third party would be entitled to set off in judgment against itself as tortfeasor the amount of compensation paid by the carrier). Thus, a self-insuring corporate parent would not be obliged to fully pay both workers' compensation and benefits and tort damages and the employee would not obtain a double recovery.
Finally, I must point out that none of the four cases cited by the majority for the proposition that Nestle Foods should be considered Manor's employer in accord with the policy of the IIA supports that proposition. In Wolf v. Scott Wetzel Servs., Inc., 113 Wash.2d 665, 782 P.2d 203 (1989) and Deeter v. Safeway Stores, Inc., 50 Wash.App. 67, 747 P.2d 1103 (1987), review denied, 110 Wash.2d 1016 (1988), the courts held that the claims administrators hired by the employer were entitled to immunity under the IIA. In Wolf, 113 Wash.2d 665, 782 P.2d 203, the worker tried to bring a claim for wrongful delay of benefits based upon his entitlement to workers' compensation benefits. In Deeter, 50 Wash.App. 67, 747 P.2d 1103, the worker sought damages based on delay in paying workers' compensation benefits and refusal to settle his industrial insurance claim. In each case "[t]he relationship of the employee, the employer, and the claims adjuster for the employer ... flow[ed] from the rights and obligations created by the IIA, not from any independent source." Deeter, 50 Wash.App. at 83-84, 747 P.2d 1103 (emphasis added) (Grosse, J., concurring), cited in Wolf, 113 Wash.2d at 675-77, 782 P.2d 203. In marked contrast, the present case involves a claim for damages under tort law apart from any entitlement to workers' compensation benefits. Moreover, the second factor heavily influencing this court in Wolf was the fact that the IIA contains a penalty provision for wrongful delay or termination of benefits thus evidencing legislative intent that the remedy for wrongful delay or termination of benefits lies within the workers' compensation system. Wolf, 113 Wash.2d at 670, 782 P.2d 203 (citing RCW 51.48.017). There is no analogous provision in the IIA establishing legislative intent that a corporate parent is immune from a third party suit merely because its affiliated companies provide coverage through self-insurance.
In Corr v. Willamette Indus., Inc., 105 Wash.2d 217, 713 P.2d 92 (1986), Willamette Industries absorbed Corco, Inc. in a corporate merger and acquired its plant equipment. After the merger, a worker employed by Western Paper Kraft Group, a wholly owned subsidiary of Willamette, was injured by machinery designed and built by Corco before the merger. The worker sued Willamette, arguing that it had succeeded to Corco's liabilities. This court affirmed the trial courts' dismissal of the action on the basis that Willamette was immune under the IIA. The court did not address the parent/subsidiary immunity issue raised in this case, however. Instead, the issue addressed was whether a corporation could be considered a third party under either the "dual capacity" or "dual persona" doctrines. Because the issue raised here was not addressed in Corr, it does not support the proposition that a corporate parent is the employer of its subsidiary's employee, as the Court of Appeals recognized in Meads v. Ray C. Roberts Post 969, Inc., 54 Wash.App. 486, 774 P.2d 49 (1989).
The last case is Coulter v. State, 93 Wash.2d 205, 608 P.2d 261 (1980). There the court disallowed a third party suit against the state for alleged negligent inspection by a state safety inspector acting pursuant to RCW 49.17, holding that the worker's failure to file a claim with the state's chief fiscal office precluded any third party action. Id. at 207, 608 P.2d 261. Further, the court observed in dicta that under former RCW 51.24.010 the Department was subrogated to the injured person's right against a third *642 party, with the right to prosecute the action. If a third party action against the Department was possible, the Department would sue itself for not performing duties which are the Department's responsibilities under RCW 49.17, thus becoming plaintiff and defendant. The court did not believe "such an anomalous result" was intended by the Legislature. Coulter, 93 Wash.2d at 208, 608 P.2d 261. Although Nestle Foods argues similar anomalous results ensue if it is subject to a third party suit, the source of the problem is WAC 296-15-023 which requires the corporate parent to include subsidiaries in its certification, and not the statutes enacted by the Legislature. Moreover, as a practical matter, it is difficult to imagine Nestle wanting to pursue an action against itself if the injured worker elects not to sue. There seems to be little danger of a self-insuring corporate parent in these circumstances placing itself in the peculiar position of being both plaintiff and defendant in a suit. Finally, courts have rejected on various grounds the argument that legislatures could not have intended that a subrogated carrier sue itself, including the ground that the subrogation provisions simply did not deal with the issue whether the employee's common law right to sue a third party was taken away from him. 2A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 72.95, at 14-331 through 332 (1996) (citing cases).
The majority's result is not supported by the IIA, the self-insurance provisions of the IIA, the history of the quid pro quo compromise underlying the IIA, this court's case law, or the purpose underlying WAC 296-15-023(2). The WAC is inconsistent with the IIA and its provisions, particularly because it results in unfairly treating employees covered under a self-insurance program differently than those covered under the state fund, and it should be invalidated. I would hold that Paul Manor is not foreclosed as a matter of law from pursuing a third party action against Nestle Foods, and would accordingly affirm the Court of Appeals and remand this matter for further proceedings.[5]
ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] There is no indication in the record of manipulation of the corporate form by Carnation or Nestle to avoid actions by employees. Rather, Carnation, and then Nestle, continuously treated employees of its transportation subsidiary and its own employees as the same employees under its certificate of self-insurance.
[2] The Legislature's failure to amend a statute interpreted by administrative regulation constitutes legislative acquiescence in the agency's interpretation of the statute. This is especially true when the Legislature has amended the statute in other respects without repudiating the administrative construction. Green River Community College v. Higher Educ. Personnel Bd., 95 Wash.2d 108, 118, 622 P.2d 826 (1980), modified, 95 Wash.2d 962, 633 P.2d 1324 (1981); State ex rel. Pirak v. Schoettler, 45 Wash.2d 367, 371-72, 274 P.2d 852 (1954).
[3] Similarly, the dissent neglects to undertake the analysis of the regulation required by the APA and our case law. The central flaw in the dissent's treatment of the regulation is its failure to address how WAC 296-15-023 was violative of RCW 34.05.570(2)(c) in any respect.
[4] In a similar situation, we found "grave constitutional questions" arose from a comparable assertion. Epperly v. City of Seattle, 65 Wash.2d 777, 779 n. 1, 399 P.2d 591 (1965) (plaintiff injured at job site, who was employee of contractor, sought to sue owner of property who paid industrial insurance premium). We said:

We are impressed, as was the trial court [which rejected the lawsuit against the owner], with the incongruous result necessarily flowing from the plaintiff's theory under which the owner of the premises who either directly or indirectly pays the insurance premium based on the hazards of his undertaking gets no protection from the employees of the contractor who may be injured in the course of the work for which the premiums are paid. The construction of the statute to permit such a result presents grave constitutional questions which have not been adequately argued.
Epperly, 65 Wash.2d at 779 n. 1, 399 P.2d 591. The Court decided the case on other grounds. Although the Court did not elaborate on the nature of the "grave constitutional questions" presented, the owner had suggested in its brief to the Court that requiring the party who paid the insurance premium also to be liable to suit by the contractor's injured employee, thereby depriving that party of the benefit of insurance, would unconstitutionally deprive the party of property without due process of law. Br. of Resp't in Epperly at 30. Violation of equal protection is probably the better constitutional argument.
[5] The IIA does not define a person as a "worker" or "employer" under Title 51 RCW solely by the common law test of master-servant. We have said "that the common-law rules, except as modified by statute, apply in determining whether the relationship of employer and employee exist[s]." D'Amico v. Conguista, 24 Wash.2d 674, 680, 167 P.2d 157 (1946) (emphasis added); Clausen v. Department of Labor & Indus., 15 Wash.2d 62, 69, 129 P.2d 777 (1942). Thus, the Legislature is not bound by, and may choose to expand or contract, the common law definitions of "employer" and "employee" for purposes of coverage under Title 51.

Title 51 is replete with instances where common law principles of the employer-employee relationship are "modified by statute" to include or exclude workers from the purview of the IIA. For example, the most significant departure from common law principles in the IIA is the provision affording coverage to independent contractors, the essence of whose contract is personal labor. RCW 51.08.070(1). General contractors are responsible for paying the premiums of employees of subcontractors, except for certain exclusions, even though the general contractor is not their common law employer. RCW 51.12.070. Such general contractors may be considered statutory employers, as they would not be considered common law employers in the ordinary course. RCW 51.12.035 provides "[v]olunteers shall be deemed employees and/or workers, as the case may be, for all purposes relating to medical aid benefits under chapter 51.36 RCW." RCW 51.12.045 provides workers' compensation coverage for offenders performing community service pursuant to court order. Likewise, RCW 51.12.020 excludes from Title 51 coverage several categories of workers who might ordinarily be employees under common law principles, including domestic workers, gardeners and maintenance workers at a private home, jockeys, and musicians. See also 2A ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 49.00 (1993) (enumerating statutory employees under the various state worker compensation acts).
In similar fashion, to further the ends of the IIA, this Court has gone beyond the constraints of the common law employer-employer relationship to find coverage under the Act. See. e.g., Bolin v. Kitsap County, 114 Wash.2d 70, 785 P.2d 805 (1990) (jurors covered under RCW Title 51 although they were not common law servants and never consented to an "employment" relationship with counties; their service was, in fact, involuntary).
The dissent's recitation of cases and authorities from other jurisdictions on the question of whether a corporate parent is entitled to the immunity of its subsidiary is interesting, but not pertinent to this case. Dissent at 639-40. As noted above, the Legislature has frequently departed from the traditional common law employer-employee relationship in deciding coverage under the Act. Moreover, the dissent fails to show how WAC 296-15-023 is beyond the authority of the Legislature or the Department, as the Legislature and Department are not bound by the common law employer-employee relationship.
[6] The dissent's contention that Manor would be treated differently if he were an employee of a firm covered by the State Fund is not necessarily even accurate. Dissent at 639. The Department's regulations provide that the general rule for classification of employees in businesses covered by the State Fund is to cover all employees of an enterprise within a single risk classification just as WAC 296-15-023 does for employees of self-insured employers and their subsidiaries. WAC 296-17-380. See also WAC 296-17-390 (business with multiple enterprises in state); WAC 296-17-420 (certain transportation, warehousing, and shipping services as general inclusions for coverage); WAC 296-17-87306 (in calculating a business' claims experience, claims experience of subsidiaries are included).
[7] Nestle also argues the Department's order stating it was Manor's employer has preclusive effect, citing Marley v. Department of Labor & Indus., 125 Wash.2d 533, 886 P.2d 189 (1994). In light of our disposition of the principal issue in this case, we do not reach this issue.
[1] Although the issue here is whether the corporate parent is or is not an employer by virtue of self-insurance, the majority several times assumes the answer to the question. See majority at 629 (Nestle Foods' predecessor Carnation "treated all of its employees, including ... its Carnaco employees"); Id. at 632 ("[t]o hold otherwise would deny Nestle the immunity from suit the IIA grants to all employers"); Id. at 636 ("[t]his Court has `consistently held that when an employer ... pays its industrial insurance premiums'").
[2] Although the majority criticizes the dissent for not explaining how WAC 296-15-023(2) is invalid, this paragraph, and the three which follow, address precisely that issue.
[3] In a footnote the majority seems to suggest that the Legislature has acquiesced in WAC 296-15-023(2)'s "interpretation" because the WAC has not been amended since promulgation. Majority at 631 n. 2. Legislative acquiescence may be found where a statutory interpretation is left standing following legislative amendment of the statute. Here, however, there is no relevant statute which has been amended. Moreover, although I cannot see how the principle applies in this case at all, the rule of silent acquiescence following administrative construction of a statute applies only when the subsequent legislative consideration involves the same issue as that covered by the administrative rule. Safeco Ins. Cos. v. Meyering, 102 Wash.2d 385, 392, 687 P.2d 195 (1984); City of Seattle v. King County, 52 Wash. App. 628, 633, 762 P.2d 1152 (1988), review denied, 112 Wash.2d 1002 (1989). There is no indication the Legislature has considered WAC 296-15-023(2).
[4] The majority thinks that this citation to other authority is irrelevant. Majority at 633-34 n. 5. It also disputes the dissent's view that Manor would be treated differently had he been covered under the state fund. Majority at 634-35 n. 6. However, there is no basis in the IIA for treating Paul Manor as Nestle's employee merely because he is covered under a self-insurance plan. That being the case, the common law is relevant to whether Nestle is his employer. Unless Nestle is his employer, his third party suit should not be barred.
[5] The Court of Appeals also correctly concluded that Paul Manor's action is not barred by res judicata or collateral estoppel. Collateral estoppel is the relevant doctrine, and the reason it does not bar this action is because in light of WAC 296-15-023(2) the administrative body never had occasion to determine whether Nestle Foods was factually Manor's employer for purposes of a third party action.