5 P.3d 38 (2000)
101 Wash.App. 634
John W. HILDAHL and Julie Hildahl, individually and as husband and wife, Appellants,
v.
Gregg BRINGOLF and Judy Bringolf, individually and as husband and wife, and the marital community composed thereof, Respondents.
No. 24317-2-II.
Court of Appeals of Washington, Division 2.
July 28, 2000.
*39 Stephen Thomas Carmick, Chehalis, for Appellants.
Donald George Daniel, Law, Lyman, Daniel, et al., Olympia, for Respondents.
HUNT, A.C.J.
John Hildahl (Hildahl) appeals the summary judgment dismissal of his personal injury lawsuit against Gregory Bringolf (Bringolf) for injuries sustained while repairing the roof on Bringolf's house. Bringolf had hired his renter, Daniel Hildahl (Daniel), as an independent contractor to repair the roof. Daniel hired Hildahl to help, but failed to pay the state-mandated industrial insurance premium to cover Hildahl's work. Fourteen months after Hildahl was injured and compensated from the state industrial insurance fund, the Department of Labor and Industries (L & I) required Bringolf to pay the overdue premium.
Hildahl argues: (1) The trial court erred in ruling that, as payor of the industrial insurance premium for Hildahl's work, Bringolf is immune from liability; and (2) Bringolf owed a duty to warn Hildahl of a deteriorated chimney and to comply with the roofing safety requirements under Washington's Industrial Safety and Health Act (WISHA), RCW ch. 49.17. We hold that because Bringolf was not Hildahl's employer, Bringolf is not immune under the Industrial Insurance Act (Act), RCW Title 51. We reverse and remand.

FACTS[1]

I. HILDAHL'S INDUSTRIAL INSURANCE CLAIM
Daniel rented a house from Bringolf. The roof leaked, and Daniel told Bringolf that the house needed a new roof. Daniel also said that he had experience and expertise in roof repair. Bringolf hired Daniel to do the work; Daniel hired his uncle, Hildahl, to assist him. Daniel failed to erect WISHA-required roof safety restraints. While working on the roof in October 1990, Hildahl slipped or tripped, grabbed the chimney, fell off the roof when the chimney crumbled, and was injured.
Earlier, Bringolf and Daniel had climbed up on the roof. In his affidavit, Daniel asserts that if Bringolf had inspected the old chimney, he would have realized "what terrible condition it was in." Bringolf asserts in his declaration that: (1) before Hildahl's accident, he was unaware of any defects on the roof or in the chimney, which appeared to be in good condition; and (2) he hired Daniel for his roofing expertise and experience, which Bringolf lacked.
Hildahl filed an industrial insurance claim with L & I, which awarded him benefits in June 1991 to compensate for his injuries. Daniel had not paid the required industrial insurance premium for Hildahl; L & I deemed Bringolf the "employer" and, in January *40 1992, required him to pay the premium under RCW 51.12.070.[2] Hildahl and Bringolf both appealed to the Board of Industrial Insurance Appeals (Board).
On appeal, both parties asserted that Bringolf was not Hildahl's employer, and the Board agreed. It determined that Daniel, not Bringolf, was Hildahl's employer "within the meaning of RCW 51.08.070."[3] Nonetheless, the Board required Bringolf to pay the outstanding $1,168 L & I premium, plus a $35,590 penalty, under RCW 51.12.070. Bringolf appealed these assessments to the Lewis County Superior Court.
Bringolf, Hildahl, and L & I resolved the appeal by stipulated order as follows: (1) The Board correctly determined that Bringolf was not Hildahl's employer; (2) Bringolf was liable for the unpaid L & I premium; and (3) the Board erred in assessing the unpaid-premium penalty against Bringolf.

II. HILDAHL'S LAWSUIT AGAINST BRINGOLF
Before entering into this stipulation, Hildahl sued Bringolf for damages, alleging that his fall was caused by Bringolf's negligence. Bringolf moved for summary judgment. Hildahl moved to amend the complaint. The trial court denied Hildahl's motion to amend and entered summary judgment for Bringolf. Hildahl appealed.
We affirmed summary judgment for Bringolf, holding:
To prove negligence, Hildahl had to demonstrate that Bringolf owed him a duty. Bringolf's only duty as a landowner was to "keep the premises under his control reasonably safe and to warn of dangers which are not obvious ... but are known to or discoverable by the owner in the exercise of reasonable care." This duty does not make a landowner responsible for the negligent acts of an independent contractor. As Daniel was acting as an independent contractor, Bringolf owed no duty to Hildahl.

Bringolf would owe a duty of care to an employee if he retained the right to control the independent contractor's work....
Bringolf provided evidence indicating that he did not control the roofing project....

Hildahl failed to provide any contrary evidence.... Consequently, there were no issues of material fact regarding the allegations in Hildahl's original complaint. Thus, the trial court did not err in dismissing those claims on summary judgment.
Hildahl v. Bringolf, No. 19113-0-II, slip op. at 13-15, 85 Wash.App. 1051, 1997 WL 156615 (Wash.Ct.App.Div.II, Apr. 4, 1997) (citations omitted; first omission in original; emphasis added). We also reversed the trial court's order denying leave to amend the *41 complaint, and remanded for further proceedings.
On remand, Hildahl filed an amended complaint, alleging that Bringolf had failed to (1) warn Hildahl "of defects and condition [sic] in the building"; (2) provide Hildahl "with a safe place to work in violation of RCW 49.17.060(1)";[4] and (3) "comply with the rules, regulations and orders promulgated pursuant to RCW 49.17.060(2)."[5] Bringolf again moved for summary judgment, asserting immunity from suit because he had paid the $1,168 premium that L & I assessed under RCW 51.12.070. The trial court granted summary judgment for Bringolf, ruling that Epperly v. City of Seattle, 65 Wash.2d 777, 399 P.2d 591 (1965), and Manor v. Nestle Food Co., 131 Wash.2d 439, 932 P.2d 628, as amended, 945 P.2d 1119 (1997), cert. denied, 523 U.S. 1102, 118 S.Ct. 1574, 140 L.Ed.2d 807 (1998), supported Bringolf's argument
that if the landowner[s] ... wind up having to pay that premium, they get the benefit of the immunity and step into the shoes of the employer that would otherwise have that benefit.
Hildahl now appeals the trial court's summary judgment dismissal of his amended complaint. The issue before us is whether Bringolf, who was not Hildahl's employer, is entitled to statutory immunity from suit by virtue of having paid the industrial insurance premium after Hildahl was injured and subsequently compensated from the state fund. We hold that, because Bringolf was not Hildahl's employer at the time of Hildahl's workplace injury, Bringolf has no immunity under the Act.

ANALYSIS

I. INDUSTRIAL INSURANCE ACT
In order to provide swift compensation for injured workers, the Washington Legislature replaced the common law fault-based system with the Industrial Insurance Act (Act), RCW Title 51. The Act established "a system of compulsory state industrial insurance," under which "all awards are paid from the accident fund." Greenleaf v. Puget Sound Bridge & Dredging Co., 58 Wash.2d 647, 658, 364 P.2d 796 (1961). This statutory industrial insurance system differs in both concept and operation from other states' workers' compensation schemes.[6]
Yet, like other workers' compensation acts, it embodies a compromise:
Under the quid pro quo compromise reflected in the Industrial Insurance Act, the employer pays some claims for which there would be no liability under common law, and the employee gives up common law actions and remedies in exchange for sure and certain relief.
Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 57, 821 P.2d 18 (1991). The Act "provides the exclusive remedy for workers injured during the course of their employment; *42 all remedies outside of the act were abolished except as provided for in RCW Title 51." Washington Ins. Guar. Ass'n v. Department of Labor & Indus., 122 Wash.2d 527, 530, 859 P.2d 592 (1993). Under this scheme,
when an employer ... pays its industrial insurance premiums pursuant to the Act the employer may no longer be looked to for recourse. The fund, created to provide for losses expected to occur, is the sole source of recovery.
Seattle-First Nat'l Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 241, 588 P.2d 1308 (1978).

II. IMMUNITY

A. EMPLOYER
Under Washington's industrial insurance scheme, an employer is immune from civil lawsuits by its employees for non-intentional workplace injuries. Flanigan v. Department of Labor & Indus., 123 Wash.2d 418, 422, 869 P.2d 14 (1994); Newby v. Gerry, 38 Wash.App. 812, 815-16, 690 P.2d 603 (1984); RCW 51.04.010.[7] For purposes of industrial insurance,
an employment relationship exists only when: (1) the employer has the right to control the servant's physical conduct in the performance of his duties, and (2) there is consent by the employee to this relationship.
Novenson v. Spokane Culvert & Fabricating Co., 91 Wash.2d 550, 553, 588 P.2d 1174 (1979). We concur with the parties and the Board that Bringolf was not Hildahl's "employer" under the Act. Bringolf did not control Hildahl's work, nor did Hildahl consent to any working relationship with Bringolf.

B. NON-EMPLOYER THIRD PARTIES
Only employers[8] are immune under the Act from suit for workplace injuries; third persons are not:
Although an injured worker may not sue his or her employer for a workplace injury, RCW 51.24.030(1) authorizes suit against a third person at fault for the worker's injury, provided the third person is not in the worker's same employ.[[9]]
Manor v. Nestle Food Co., 131 Wash.2d at 444, 932 P.2d 628; see also Frost v. Department of Labor & Indus., 90 Wash.App. 627, 631, 954 P.2d 1340 (1998), review denied, 137 Wash.2d 1001, 972 P.2d 464 (1999). We next consider whether Bringolf, who was not Hildahl's "employer," is a potentially liable "third person" under the Act.

1. THIRD PERSONS
The Act provides:
If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury... the injured worker ... may elect to seek damages from the third person.
RCW 51.24.030(1).[10] Stated another way,
"When compensable injury is the result of a third person's tortious conduct, all statutes preserve a right of action against the *43 tortfeasor, since the compensation system was not designed to extend immunity to strangers."
Manor, 131 Wash.2d at 450, 932 P.2d 628 (quoting 2A ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 71.00, at 14-1 (1993) (emphasis added)).
In Manor, the Supreme Court held that a self-insured parent company, Nestle, was immune from suit by its injured subsidiary's worker, Manor. 131 Wash.2d at 456, 932 P.2d 628. Nestle was not a "third person," whom Manor could sue for additional damages after Nestle had already paid $455,000 from its own funds to compensate for his workplace injuries caused by another subsidiary's employee. 131 Wash.2d at 450, 932 P.2d 628. Central to the court's holding was an administrative regulation that conferred "employer" status on the self-insured parent company. 131 Wash.2d at 453, 932 P.2d 628.[11] Here, there is no corresponding regulation covering Bringolf's non-employer, premium-payment after-the-fact status; and Bringolf was not self-insured.
Neither Manor nor any case or statute mandates that immunity automatically flows from payment of an industrial insurance premium. And Manor focuses on the consequences of self-insurance as compared to insuring with the state through the industrial insurance fund.[12]

2. "WORKER'S SAME EMPLOY"
Also significant in Manor was that the forklift operator who ran over Manor's foot was in Manor's "same employ." 131 Wash.2d at 445, 932 P.2d 628. Here, Bringolf was not in Hildahl's "same employ." Bringolf hired independent contractor Daniel to repair the roof. Daniel was entitled to hire whomever he wanted to help, and he hired Hildahl. Bringolf did no work on the roof and he did not work with Hildahl. Bringolf and Hildahl were not workers in the "same employ."

III. PREMIUM PAYMENT
RCW 51.14.010 requires every "employer" to "secure the payment of compensation" under the Act by either insuring with the state fund or self-insuring. Here, Daniel, Hildahl's employer, failed to meet this requirement.
An employer's premium default is remedied by RCW 51.12.070, which provides that "the person ... who lets a contract for such work shall be responsible primarily and directly for all premiums upon the work." (Emphasis added.)[13] If a non-employer owner who "lets a contract" pays the premium, the owner is "entitled to collect from the contractor the full amount payable in premiums." RCW 51.12.070. Thus, as was the case under RCW 51.12.070's predecessor statute, the owner of property affected *44 by the contract functions as a surety for the industrial insurance premiums.

A. NON-EMPLOYER'S POST-INJURY PREMIUM PAYMENT DOES NOT CREATE IMMUNITY
Here, Bringolf was the owner of the property and the person "who let[] a contract," whom the Board held responsible for the unpaid premium under RCW 51.12.070. Bringolf's remedy under the statute, however, was to seek, not judicially imposed statutory immunity, but rather, reimbursement from the independent contractor, Daniel, who should have paid the premium before Hildahl began the work. See RCW 51.12.070 (prohibiting the issuance of a building permit "to any person who has not submitted to [L & I] an estimate of payroll and paid premium thereon ... or proof that such person has qualified as a self-insurer").
We extrapolate from Hammack v. Monroe St. Lumber Co., 54 Wash.2d 224, 232, 339 P.2d 684 (1959), in which the Supreme Court observed that a new statute, which dropped industrial insurance immunity for third parties, could not be constitutionally construed to impose liability retrospectively upon a third party. Conversely, under the Act, even if non-employer immunity were to flow from payment of the insurance premium, such escape from liability should not obtain after a worker is injured, thereby extinguishing the injured worker's preexisting cause of action in tort. It would defeat the purpose of the Act to allow a non-employer to minimize financial exposure by paying an industrial insurance premium after a worker is injured on the job and after the state fund has compensated a worker for his or her injury. Thus, Bringolf cannot extinguish Hildahl's existing common law cause of action that arose when Hildahl fell off Bringolf's roof simply by paying the industrial insurance premium many months later.
In Greenleaf, the Supreme Court rejected an argument analogous to Bringolf's argument: Puget Sound Bridge & Dredging Company (P.S. Bridge), the general contractor, argued that, because it would have been obliged to pay its subcontractor's industrial insurance premium if the subcontractor defaulted, P.S. Bridge was, in effect, the "employer" and was thereby immune from suit by its subcontractor's employee, Greenleaf. 58 Wash.2d at 657, 364 P.2d 796. The Court reasoned:
(1) There was no default; (2) [P.S. Bridge] was not [Greenleaf's] employer; and (3) the default contingency, which is negatived by the uncontroverted facts, does not change the situation. [P.S. Bridge] is a third party, not [Greenleaf's] employer who alone is immune.[[14]]
There are decisions in other states having systems of workmen's compensation which contrast with our compulsory state monopoly scheme of industrial insurance in which the prime contractor has been held to be the statutory employer of his subcontractor's workmen when the subcontractor failed to purchase a policy of workmen's compensation insurance. The reason is that such statutes impose a primary obligation upon the prime contractor to pay the compensation schedule provided by statute directly to the injured workman, or, in the event of death, to his statutory beneficiaries. Under such circumstances, the prime contractor has been compelled to pay the workmen's compensation directly to the subcontractor's injured workmen.[[15]]
. . . .

*45 But Washington does not have a workmen's compensation act. It has a system of compulsory state industrial insurance and all awards are paid from the accident fund.
Greenleaf, 58 Wash.2d at 657-58, 364 P.2d 796 (citations and footnote omitted; emphasis added).
Bringolf argues that statutory immunity from suit should extend to a non-employer who pays the premium. There are no cases so holding. In Epperly v. City of Seattle, which we discuss in further detail below, the Supreme Court declined to "adopt []or reject the reasoning" under which a property owner becomes a statutory employer when it is "primarily liable for the payment of the premium." 65 Wash.2d at 779 n. 1, 399 P.2d 591 (stating in dicta that "grave constitutional questions" plague the scenario "under which the owner of the premises who either directly or indirectly pays the insurance premium based on the hazards of his undertaking gets no protection from the employees of the contractor who may be injured in the course of the work for which the premiums are paid").
Manor, likewise, does not support Bringolf's requested extension of immunity. When a co-worker for a Nestle subsidiary ran over Manor's foot with a forklift, self-insured Nestle compensated Manor directly from its own funds; Manor neither sought nor received payments from the state industrial insurance fund. 131 Wash.2d at 443, 932 P.2d 628. Where a self-insurer has already compensated an injured worker, the law prevents the worker's double-recovery from the same parent company. As the Supreme Court explained:
By fulfilling its obligations to Manor under Title 51, Nestle should, a fortiori, be entitled to its side of the quid pro quo central to the entire workers' compensation statutory design: it should be immune from suit by Manor. In the words of the late Professor Larson, "immunity follows compensation responsibility." 2A ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 72.33, at 14-290.3 (1993).
Manor, 131 Wash.2d at 450, 932 P.2d 628 (emphasis added). Manor emphasizes that immunity flows from "compensation responsibility," not from premium responsibility. Here, Bringolf did not compensate Hildahl; he paid only the premium into the state industrial insurance fund, which had already compensated Hildahl for his injuries.[16]
Bringolf has advanced no viable theory under which he would have been immune from liability to Hildahl at the time that Hildahl fell off the roof and was injured. Bringolf was not Hildahl's employer at that time; and without an employer-employee relationship, Bringolf could not be immune.[17] Again, we look to the insurance model that the Legislature adopted for compensating injured workers in our state. Generally, employers pay premiums into the state fund, from which their injured workers are compensated. Some employers may pay premiums for years with no employees being injured or drawing from the fund. The premiums that other employers pay, however, may turn out to be relatively nominal compared to the larger awards paid to their injured employees from the fund. It would be contrary to the Legislature's intent to construe the Act as allowing non-employer tortfeasors to obtain immunity simply by waiting to assess potential liability to already-injured workers and then to pay their contractor's overdue premium after the fact. Such a scheme could jeopardize viability of the state industrial insurance fund, thereby undermining the Legislature's intent to create a sound source of compensation for injured workers.

B. EQUAL PROTECTION; DUE PROCESS
Citing Manor, 131 Wash.2d at 449 n. 4, 932 P.2d 628, and Epperly, 65 Wash.2d at 779 n. 1, 399 P.2d 591, Bringolf asserts that it is a denial of his rights to due process and equal protection of the law for L & I to collect the *46 industrial insurance premium from him without providing immunity from suit corresponding to that which premium-paying employers enjoy under the Act. We disagree.
First, as we noted above, Bringolf already has a statutory remedy  recovery of the premium from Daniel. RCW 51.12.070. Second, Bringolf failed to challenge directly L & I's assessment of the premium; nor did he claim to L & I or the Board that, as a "person ... who let[] a contract," he was entitled to immunity under the Act. In any event, such a claim would have been inconsistent with the limitation of immunity to "employers" as defined under the Act.
We return to the legal evolution of Washington's Industrial Insurance Act. Originally, injured workers had common law remedies in tort against tortfeasor employers. From this large body of law, the Legislature carved out a narrow compromise between employers and employees for compensating workplace injuries. We find no indication of a legislative intent to extend this immunity to non-employer tortfeasors. Nor will we undertake such expansion judicially.
Manor is inapposite. There, the Court noted that it would violate equal protection[18] to deny immunity to companies that self-insure and pay the actual compensation to the injured workers from their own coffers. 131 Wash.2d at 449, 932 P.2d 628. Manor did not address payment of a premium into the state fund. Nor does the Epperly dicta provide guidance, though noting "grave constitutional questions" where an owner receives no industrial insurance protection in return for payment of a required premium:
The trial court's decision [rejecting the worker's lawsuit against the city] was based on the ground that the city was a statutory employer as defined by the Industrial Insurance Act because it was primarily liable for the payment of the premium under RCW 51.12.050. We neither adopt nor reject the reasoning of the trial court, but prefer to rest our decision on another ground.
We are impressed, as was the trial court, with the incongruous result necessarily flowing from the plaintiff's theory under which the owner of the premises who either directly or indirectly pays the insurance premium based on the hazards of his undertaking gets no protection from the employees of the contractor who may be injured in the course of the work for which the premiums are paid.[[19]] The construction of the statute to permit such a result presents grave constitutional questions which have not been adequately argued.
Epperly, 65 Wash.2d at 779 n. 1, 399 P.2d 591 (emphasis added).
Yet, despite the judicial concerns expressed in Epperly in 1965, six years later the Legislature again amended RCW 51.12.070, broadening its premium responsibility to encompass all "person[s] ... who let[] a contract," in addition to those who let extra-hazardous contracts. Laws of 1971, ch. 289, § 81. Moreover, in the 35 years since Epperly, the Supreme Court has not directly addressed these constitutional questions. Epperly's dicta is neither binding nor persuasive, especially under the facts here, where Bringolf had not paid the premium before Hildahl's accident.
Thus, we conclude that it is not unconstitutionally arbitrary to provide RCW 51.08.070 employers with immunity from civil suit, while denying immunity to RCW 51.12.070 "person[s] ... who let[] a contract" for work and who are "responsible primarily and directly for all [industrial insurance] premiums upon the work." The latter group's surety-like premium responsibility imposes only a temporary burden, reimbursement for which can be collected from the direct employer under RCW 51.12.070.

IV. OTHER THEORIES OF LIABILITY
In ruling that Bringolf was immune from suit and in granting summary judgment on *47 remand, the trial court did not rule on the duty-to-warn or WISHA theories that Hildahl presented in his amended complaint. Consequently, we have not considered these other theories. Thus, we reverse summary judgment based on Bringolf's claimed immunity and remand to the trial court to determine whether Hildahl's other claims against Bringolf are factually or legally viable.
Reversed and remanded.
SEINFELD, J., and HOUGHTON, J., concur.
NOTES
[1] We take much of the factual recitation from our unpublished opinion in Hildahl's earlier appeal, Hildahl v. Bringolf, No. 19113-0-II, slip op. at 2-3, 85 Wash.App. 1051, 1997 WL 156615 (Wash.Ct.App.Div.II, Apr. 4, 1997).
[2] RCW 51.12.070 provides:

The provisions of [the Industrial Insurance Act] shall apply to all work done by contract; the person ... who lets a contract for such work shall be responsible primarily and directly for all premiums upon the work. The contractor and any subcontractor shall be subject to the provisions of [the Industrial Insurance Act] and the person ... letting the contract shall be entitled to collect from the contractor the full amount payable in premiums and that contractor in turn shall be entitled to collect from the subcontractor his proportionate amount of the payment.
(Emphasis added.) Under this statute, Bringolf was the "person ... who let[] a contract for ... work," and Daniel was the contractor, who hired Hildahl to help do the work.
[3] RCW 51.08.070 defines "employer" as

any person, body of persons, corporate or otherwise, and the legal representatives of a deceased employer, all while engaged in this state in any work covered by the provisions of this title, by way of trade or business, or who contracts with one or more workers, the essence of which is the personal labor of such worker or workers. Or as a separate alternative, persons or entities are not employers when they contract or agree to remunerate the services performed by an individual who meets the tests set forth in subsections (1) through (6) of RCW 51.08.195.
The Board concluded that Daniel was Hildahl's RCW 51.08.070 employer, finding:
It was agreed by Gregg Bringolf and Daniel F. Hildahl that Daniel Hildahl could hire employees of his choice to assist him in the re-roofing of the Bringolf property. Daniel Hildahl was to receive $10.00 per hour for his work and any assistants were to receive $8.00 per hour for their work.
... John W. Hildahl entered into an employment contract with Daniel F. Hildahl to assist in roofing Mr. Bringolf's property. John W. Hildahl agreed to be paid $8.00 per hour for his work in roofing the Bringolf property.
[4] Subsection (1) of RCW 49.17.060 requires that an employer "furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees...." RCW 49.17.060(1).
[5] Subsection (2) of RCW 49.17.060 mandates that employers "comply with the rules, regulations, and orders promulgated under [RCW ch. 49.17]." RCW 49.17.060(2). WISHA requires that a fall restraint, fall arrest, or positioning device system be in place to protect workers when they "are exposed to a hazard of falling from a location 10 feet or more in height." WAC 296-155-24510.
[6] The Washington Supreme Court explained long ago:

[O]urs is not an employer's liability act. It is not even an ordinary [workers'] compensation act. It is an industrial insurance statute. Its administrative body is entitled the industrial insurance commission. All the features of an insurance act are present. Not only are all remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund fed by various employers. When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended. Let a claim be rejected by the commission, the latter and not the employer is to be sued.
Stertz v. Industrial Ins. Comm'n, 91 Wash. 588, 594, 158 P. 256 (1916). Precedent for the Act came from Germany. Stertz, 91 Wash. at 595, 158 P. 256.
[7] Employers who intentionally cause workers' injuries are not immune. RCW 51.24.020.
[8] As we recently recognized, "an employee may have two employers for purposes of [the Act].... [I]n order for a dual employment relationship to exist, both employers must have the right to control the worker's physical conduct and the worker must consent to the employer/employee relationship." Sonners, Inc. v. Department of Labor & Indus., ___ Wash.App. ___, ___, 3 P.3d 756 (2000) (citations omitted). But Bringolf does not meet this test for a dual "employer."
[9] The phrase, "third person, not in a worker's same employ," RCW 51.24.030(1), excludes "fellow servant[s] of the same employer." Marsland v. Bullitt Co., 71 Wash.2d 343, 346, 428 P.2d 586 (1967).
[10] Further,

[t]he right to sue a third party was conferred as an added remedy to the industrial insurance award. Under the prior law, if there were a recovery against a third party of less than the industrial insurance award, the accident fund contributed only the difference. Under the present scheme, however, the injured workman who recovers from a third party receives and retains the maximum industrial insurance award plus his third party recovery, in which event, however, the accident fund is given a lien on the third party recovery for all payments from both the accident and medical aid funds.
Greenleaf, 58 Wash.2d at 657, 364 P.2d 796 (footnote omitted).
[11] The Supreme Court rejected Division III's holding that WAC 296-15-023(2) abridged workers' rights to bring third-party lawsuits. 131 Wash.2d at 445, 448-49, 932 P.2d 628.
[12] Employers who self-insure can sue a third party who causes a worker's injury if the worker does not sue. RCW 51.24.050(1).
[13] In 1915, the predecessor to RCW 51.12.070 applied only to "extra hazardous" work done by contract. Furthermore, in the private sector, "the contractor [was] responsible, primarily and directly, to the accident fund [for payments into the accident fund] ... and the owner of the property affected by the contract [served as] surety for such payments." Laws of 1915, ch. 188, § 6 (emphasis added). But in 1921, the predecessor statute was amended to read:

the employer who lets a contract for ... extra-hazardous work shall be responsible primarily and directly to the accident fund for the proper percentage of the total payroll of the work ... and the employer shall be entitled to collect from the contractor the full amount payable to the accident fund.
Laws of 1921, ch. 182, § 8 (emphasis added).
In 1923, the term "employer" was replaced with "person," as in the current statute. Laws of 1923, ch. 136, § 5. In 1955, RCW 51.12.070 was enacted, reading:
The provisions of this title shall apply to all extrahazardous work done by contract; the person ... who lets a contract for such extra-hazardous work shall be responsible primarily and directly for all payments due to the accident fund and medical aid fund upon the work.... [T]he person ... letting the contract shall be entitled to collect from the contractor the full amount payable to the accident fund and medical aid fund....
Laws of 1955, ch. 74, § 7. In 1971, "extrahazardous" was deleted from the statute. Laws of 1971, ch. 289, § 81.
[14] We acknowledge that in both Greenleaf and Marsland v. Bullitt Co., the property-owner defendants did not pay the industrial insurance premiums, Marsland, 71 Wash.2d at 345, 428 P.2d 586; Greenleaf, 58 Wash.2d at 657, 364 P.2d 796, and therefore, had no standing to argue:

there is no reasonable basis for rendering the defendant [property owner], who is primarily and directly responsible for making all payments into the referred fund, liable to defend a third party action, while, at the same time, immunizing the plaintiffs' common-law employer, who is only secondarily liable for payment into the fund, from such liability.
Marsland, 71 Wash.2d at 348, 428 P.2d 586. This argument, employed here by Bringolf, the statutory "surety;" is unpersuasive given the mechanism in RCW 51.12.070 for recoupment of premium payments from the "employer," Daniel.
[15] The above distinction is similar to the self-insurer distinction drawn in Manor v. Nestle, 131 Wash.2d at 450, 932 P.2d 628.
[16] Further, as we pointed out earlier, Bringolf's contention that immunity flows from premium payment fails because, at the time of Hildahl's accident, he had not paid the premium into the state industrial insurance fund.
[17] Nor was Bringolf a qualified self-insurer.
[18] U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 12.
[19] This language, in essence, outlines another constitutional violation, namely the government's taking of property without due process and just compensation. U.S. CONST. amend. V; WASH. CONST. art. I, § 16.