

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOSE JAIMES, | ) | |
| | ) | No. 73148-3-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| NDTS CONSTRUCTION, INC., a | ) | |
| Washington corporation; PACIFIC | ) | |
| HUTS AND CASTLES, INC, a | ) | |
| Washington corporation; PACIFIC | ) | |
| HUTS AND CASTLES CONSTRUC- | ) | |
| TION, a Washington business; GREG | ) | UNPUBLISHED OPINION |
| QUINN, an individual and/or agent; | ) | |
| DALE QUINN, an individual and/or | ) | FILED: June 6, 2016 |
| agent; DIXIE QUINN, an individual | ) | |
| and/or agent; MARY QUINN, an | ) | |
| individual and/or agent; PAVEL | ) | |
| STRIZHEUS, an individual and/or | ) | |
| agent; TIMOFEY STRIZHEUS, an | ) | |
| individual and/or agent; VASILIY | ) | |
| STRIZHEUS, an individual and/or | ) | |
| agent; NIKOLAY DZYUBAK, an | ) | |
| individual and/or agent; EMPLOYEES, | ) | |
| COMPANIES, and CORPORATIONS | ) | |
| A-D, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| SUPERIOR FLOORS & | ) | |
| COUNTERTOPS, LLC, a Washington | ) | |
| corporation, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BECKER, J. — The appellant, a day laborer who was always paid in cash, was injured while working on a construction site. There is a genuine issue of

material fact whether the appellant consented to an employer-employee relationship with the company that belatedly paid the industrial insurance premium. His third-party suit against that company should not have been dismissed on summary judgment.

In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmoving party, in this case appellant Jose Jaimes. If reasonable persons might reach different conclusions, the motion should be denied. Novenson v. Spokane Culvert & Fabricating Co., 91 Wn.2d 550, 552, 588 P.2d 1174 (1979).

In order to provide swift compensation for injured workers, the Washington legislature replaced the common law fault-based system with the Industrial Insurance Act, Title 51 RCW. Hildahl v. Bringolf, 101 Wn. App. 634, 640, 5 P.3d 38 (2000), review denied, 142 Wn.2d 1020 (2001). The act established a system of compulsory state industrial insurance under which all awards are paid from the state industrial insurance fund. Hildahl, 101 Wn. App. at 640. Under the act, an employer is immune from civil lawsuits by its employees for nonintentional workplace injuries. Hildahl, 101 Wn. App. at 642. But "a third person, not in a worker's same employ," is not immune and may be subject to suit by an injured worker. RCW 51.24.030(1); Hildahl, 101 Wn. App. at 642.

When a defendant asserts immunity under the act, the question is whether an employer-employee relationship exists between the defendant and the plaintiff. See, e.g., Novenson, 91 Wn.2d at 552. That is the question in this

2

appeal. Respondent Superior Floors & Countertops LLC claims employer immunity from the civil suit brought by Jaimes for his on-the-job injuries.

Jaimes immigrated to the United States from Mexico in 2005. He eventually settled in Washington, where he found temporary, sporadic work as a day laborer on different construction sites. Around June 2012, another construction worker he met on the street told him about a potential job. Jaimes went to the jobsite and met with Timofey Strizheus. Strizheus hired him to do small general labor jobs that the contractors had left unfinished. According to Jaimes, Strizheus told him he would be working for a company called NDTS. Over the next three months, Strizheus sent Jaimes to work on several different jobsites. Jaimes was always paid in cash by Strizheus, usually weekly.

On August 27, 2012, Jaimes was on a jobsite trying to install a heavy second-story window in a residence that was under construction. Jaimes was standing on a ladder holding the window when the ladder slipped. Jaimes fell to the ground on his back, and the heavy window fell on top of him, causing major injuries. A coworker took Jaimes to the hospital.

Afterwards, Jaimes approached Strizheus to ask for information about health insurance and workers' compensation. Strizheus said Jaimes was responsible for paying for his own workers' compensation and health insurance because he was not an employee.

A "Report of Industrial Injury" was filled out by Jaimes' surgeon on August 30, 2012, and filed with the Department of Labor and Industries. The claim listed "Pacific Huts and Castles" as Jaimes' employer. It is unclear how the surgeon

obtained this information. Jaimes, who was heavily medicated in the hospital, does not recall helping to fill out the form.

Jaimes received industrial insurance benefits. The Department of Labor and Industries found that no premiums had been paid by Pacific Huts and Castles Inc. and eventually filed a warrant against NDTS Construction Inc. doing business as Pacific Huts for the outstanding premiums plus interest. The amount owed by NDTS was paid in October 2013.

In March 2014, Jaimes filed a civil suit for negligence naming as defendants "on information and belief" a number of individuals and entities related to Strizheus, including brothers Timofey, Pavel, and Vasily Strizheus; NDTS; and Pacific Huts. Also named as a defendant was respondent Superior Floors. The trial court dismissed all these defendants on summary judgment, concluding that they were immune from suit as the employers of Jaimes. Jaimes appeals only the dismissal of Superior Floors. He contends there is no evidence that he consented to an employment relationship with Superior Floors and Superior Floors is therefore a third party subject to suit under 51.24.030(1).

In support of summary judgment, the defendants rely on evidence indicating that the three Strizheus brothers own Superior Floors and that Superior Floors does business under the trade name of Pacific Huts. The defendants explain that the Pacific Huts trade name was at one time owned by NDTS, a company partially owned by Timofey Strizheus. They declare that NDTS became an inactive corporation in 2011 and that NDTS, while remaining the registered owner of the Pacific Huts trade name, transferred the right to use it to

Superior Floors. Superior Floors signed the contract for construction of the residence Jaimes was working on when he was injured. NDTS is not mentioned in the contract. The outstanding premiums assessed against NDTS by the Department of Labor and Industries were paid by Superior Floors on behalf of NDTS.

According to the defendants, the facts outlined above contradict Jaimes' testimony that he was working for NDTS and prove conclusively that Superior Floors was actually his employer on the day of the accident. But facts known to the Strizheus brothers about how they structured the ownership of and relationships among the various Strizheus entities are not dispositive in this appeal because these facts were not known to Jaimes. When the facts in the record are taken in the light most favorable to Jaimes, he was told by the Strizheus brothers that he was working for NDTS. At the time of the accident, he had no reason to believe his employer was an entity named Superior Floors. In fact, he claims he had never heard of Superior Floors until his attorneys began to investigate the possibility of a third-party claim.

For purposes of workers' compensation, an employment relationship exists only when: (1) the employer has the right to control the servant's physical conduct in the performance of his duties and (2) there is consent by the employee to this relationship. Novenson, 91 Wn.2d at 553. The right of control is not by itself determinative. Novenson, 91 Wn.2d at 553. "Unlike the common law, compensation law demands that, in order to find an employer-employee relation, a *mutual* agreement must exist between the employer and employee."

Fisher v. City of Seattle, 62 Wn.2d 800, 804, 384 P.2d 852 (1963). To thrust upon a worker an employee status to which he has not consented might deprive him of the valuable right to sue for damages at common law.

> When the party asserting the existence of an implied employment relation is not an employee seeking statutory compensation, but an employer seeking a defense to a common-law suit, different social values are at stake. In the former situation, if an employment agreement is established, moderate statutory benefits are available to the injured worker; however, reaching such a conclusion in the second situation results in the destruction of valuable common-law rights to the injured workman.

Novenson, 91 Wn.2d at 554-55. For this reason, "the spotlight focuses on the employee," not on the employer. Fisher, 62 Wn.2d at 804.

Jaimes testified that when he began working for the Strizheus brothers, he knew only that they were in business as NDTS. Putting the spotlight on the employer, the defendants argue that NDTS could not have been Jaimes' employer because it was an inactive corporation. But if NDTS was an inactive corporation, there is no reason why Jaimes should have known it, and no reason why he should have discovered or inferred that NDTS had transferred its trade name to another entity. Thus, whether NDTS did or did not exist at the time of the accident is irrelevant to the issue of consent. The spotlight is on Jaimes, and the question is whether he had a mutual agreement with Superior Floors.

Jaimes, alleged by defendants to be an employee of Superior Floors, did not receive a paycheck or anything else in writing from Superior Floors. The Strizheus brothers did not inform him at any time before the accident that Superior Floors was his employer. In fact, it does not appear that they kept him or any other temporary day laborer on the books of any of their companies as an

6

employee. There is no evidence of "all those things every employer is required to do, such as employee reporting, payment of industrial insurance premiums, internal revenue withholding, and general bookkeeping and accounting concerning these daily laborers." Novenson, 91 Wn.2d at 552-53. When Jaimes was injured, the Strizheus brothers told him he was not an employee. On this record, there is not even an inference that Jaimes consented to be employed by Superior Floors.

The defendants claim Superior Floors is the entity that paid the warrant filed by the Department of Labor and Industries for the outstanding premiums assessed against NDTS d/b/a Pacific Huts. The defendants argue that by virtue of making this belated payment, Superior Floors obtained an employer's immunity from suit under Manor v. Nestle Food Co., 131 Wn.2d 439, 456, 932 P.2d 628, 945 P.2d 119 (1997), cert. denied, 523 U.S. 1102 (1998). Manor is readily distinguished. A self-insured company paid the injured employee more than $450,000 in medical and time loss benefits directly from its own funds, as it was required by law to do. Manor, 131 Wn.2d at 449-50. The court held that the company, having fulfilled its obligation to provide compensation, had the employer's immunity from a third-party suit. Manor, 131 Wn.2d at 452. Under Manor, immunity flows from "'compensation responsibility,' not from premium responsibility." Hildahl, 101 Wn. App. at 648. Here, Superior Floors paid no compensation. An after-the-fact payment of a premium does not fulfill an employer's obligations. Hildahl, 101 Wn. App. at 648 n.16. And assuming it was

7

Superior Floors that paid the belated premium, the payment does not prove that Jaimes consented to an employer-employee relationship with Superior Floors.

The defendants contend that Jaimes admitted being the employee of Superior Floors and that he should now be estopped from arguing inconsistently with those admissions. Their argument relies on statements by Jaimes during the litigation that reflect his uncertainty about the relationships among the various Strizheus entities and his strategy of pleading in the alternative to avoid leaving out a potentially liable party. For example, the complaint states that at the time of the incident, Jaimes was "an employee of Pacific Huts and Castles, Inc., . . . which, upon information and belief, is a subsidiary of NDTS Construction, Inc., and/or Superior Floors and Countertops, LLC and/or Pacific Huts and Castles Construction." In response to written discovery, Jaimes stated that one of his employers in 2012 was Pacific Huts, "aka Superior Floors and Countertops, aka NTDS Construction aka Pavel Strizheus." Such statements do not admit that Jaimes consented to work for Superior Floors, and they do not create an estoppel.

In sum, taken in the light most favorable to Jaimes as the nonmoving party, there is a genuine issue of material fact as to whether Jaimes consented to an employer-employee relationship with Superior Floors. Because the absence of consent is dispositive, it is unnecessary to address the control prong of the test

for an employment relationship in the workers' compensation context. Summary judgment to Superior Floors was improper.[1]

    Reversed.

WE CONCUR:

_____

Becker, J

_____

Cox, J

_____

---

[1] Given our disposition of this case, it is unnecessary for us to decide Jaimes' motion to strike.